THE SIRIUS STAR, Inc. v. STURGEON BAY SHIPBUILDING & DRY DOCK CO.

No. 10507.

United States Court of Appeals Seventh Circuit.

April 18, 1952.

Rehearing Denied May 29, 1952.

480

Sumner M. Redstone, Ford, Bergson, Adams & Borkland, Washington, D. C., for appellant.

Robert Branand, Jr., Chicago, Ill., Emmet Horan, Milwaukee, Wis., William E. Wagener, Sturgeon Bay, Wis., Seago, Pipin, Bradley & Vetter, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff, engaged in fishing on the Atlantic, contracted on May 22, 1946 with defendant, a shipbuilder at Sturgeon Bay, Wisconsin, to buy, for $269,000, a fishing trawler, which defendant agreed to construct within the "estimated" completion date of December 15, 1946. Plaintiff advanced $75,000. The vessel was not completed until late in the summer of 1947. On December 15, 1948, having failed to make further payments, plaintiff filed suit to recover the moneys advanced, claiming that, because of the deceit of defendant in two respects, as it averred, it was entitled to rescind and to recover what it had paid. At the conclusion of the trial, the court entered judgment in favor of defendant, dismissing plaintiff's suit. This appeal followed.

Plaintiff's theory of recovery, as set forth in its complaint, was that the time of completion was of the essence of the contract; that, in agreeing to attempt to complete construction before the "estimated" delivery date, defendant had made a misrepresentation of fact, in that it then knew that it could not and would not build and equip the trawler within such period; that such misrepresentation was employed in order to obtain, fraudulently, advancement of the $75,000; that defendant failed to complete the work by December 15, 1946 and made no offer to deliver until September 2, 1947, and that, by virtue of these facts, plaintiff was entitled to rescind. It claimed also that it had a right to rescission for the further reason that, as it averred, defendant had fraudulently demanded payment for extras in the amount of $10,000 and a 5% in addition to the agreed price, under what the parties term the escalator clause included in the contract to provide for increased costs of materials and labor,[1] whereas in fact defendant had not furnished extras in the amount demanded, and was not entitled to add 5% to the contract price because of increase in costs.

The court found the facts substantially as follows. The contract provided as to completion, that "The time of completion and delivery is estimated, but the Builder agrees to use all reasonable efforts to complete and make delivery of the vessel at the time herewith stated. Delivery is subject to allocation and delivery of materials, government control of materials, effect of war and labor conditions, delays of carriers, Acts of God, force majeur and causes beyond control of the Builder.", The document further stipulated that it constituted the entire agreement between the parties and was to be construed according to the laws of Wisconsin.

Plaintiff knew that conditions resulting from World War II existing at the time of the execution of the contract had created scarcity of machinery and equipment necessary in the contruction of the vessel and that this fact rendered the time of completion of the ship uncertain. Because of these conditions, defendant's construction was hampered and delayed in obtaining materials and equipment necessary to complete the ship, such as a generator furnished by the Cooper-Bessemer Corporation, a winch-generator built by the General Elec-

1. This clause is as follows: " * * * In accordance with Section 1499 19A of the General Maximum Price Regulation, the price quoted herein shall be adjusted to compensate the seller for any permissible increase in the prices of any items entering into the cost of this work between the date of this contract and the date of the delivery of the work. In any event, said Price Adjustment is not to exceed Five (5%) per cent of contract price. * * * In the event that there is no applicable price regulation in effect at the time of delivery any increase in the cost of the work as cited above shall be added to the contract price. In no event shall the total of all Price Adjustments by reason of the aforementioned exceed five (5%) per cent of the contract price * * *."

tric Corporation and other equipment and machinery, all essential in the construction of the vessel. The impossibility of securing these materials, within the time they had been contracted to be delivered by the suppliers, necessitated the delays incurred. Defendant was also hampered by reason of changes and extra work insisted upon by plaintiff. As a consequence of these facts, the vessel was not completed until about September 2, 1947.

As the work continued, after December 15, 1946, plaintiff made no objection, "for a long period of time," to any delay in the completion of the ship but permitted defendant to proceed with the work and to invest in its construction a sum in excess of $251,000 including the $75,000 advanced by plaintiff. Plaintiff thereby treated the contract as continuing in force. During this time, realizing the unavoidable difficulties encountered by defendant in obtaining material and equipment, plaintiff also undertook, without objection and without complaint on its part, to cooperate with and aid defendant in its efforts to obtain material and equipment and to speed up delivery by the suppliers. By such conduct, it evinced an intention to waive completion and delivery of the vessel on December 15, 1946.

The contractual provision for a loan from the Canal National Bank of Portland, Maine, was for the benefit of plaintiff, and defendant was in no way responsible for the financing of the balance of the purchase price by plaintiff.

The court found expressly that defendant never intended to and did not deceive plaintiff in any respect; that plaintiff did not at any time give defendant notice that it intended to rescind; that it never informed defendant that unless the work was completed within a reasonable time, the contract would be rescinded; that plaintiff never advised defendant that it would not accept delivery of the vessel; that, when plaintiff failed to pay the balance due on the contract, defendant notified it that it was in default and that, if the default continued for more than five days, defendant would proceed to sell the vessel at either public or private sale; that plaintiff failed to pay any further sums within said period and that, thereupon, the vessel was sold to the Charlevoix Transit Company for $190,000; that, before completing the sale, defendant afforded plaintiff opportunity to purchase the ship at the same price but that plaintiff did not avail itself of the privilege.

During the progress of the construction defendant furnished work and material in the form of extras in a substantial amount and was entitled to make additional charges against plaintiff based upon increases in costs incurred during the term of the contract. However, the court added, "because of its belief in the inability * * * of the plaintiff to pay such additional charges, it therefore waives the same."

The court ultimately found that the evidence failed to establish any fraud upon the part of defendant in connection with the contract, either at its inception or thereafter; that the plaintiff, by its conduct, waived completion and delivery of the vessel at the estimated completion date and was estopped from asserting any alleged delay as justification for its breach of the contract. It concluded that the estimated time for completion mentioned in the contract was not of its essence; that plaintiff had broken its contract; that plaintiff had failed to rescind it; that it was not entitled to rescind; that the contract represents the entire agreement between the parties; that the plaintiff was not entitled to relief of any kind, and that defendant, having waived its counterclaim, could not recover thereon but was entitled to judgment for costs upon the original complaint.

We have examined carefully all of the evidence, both oral and documentary, contained in the record. There were some sharp conflicts in testimony, but the trial court, endowed with the function of resolving such controversies and determining the credit to be extended to the witnesses, had before it adequate substantial evidence to sustain each of the findings made. Under well known rules, therefore, we have no right to substitute our judgment for that of the District Court or to set aside the latter's findings, in the absence of a showing that

they are clearly erroneous. Whether, upon the controverted evidence submitted, we would have adopted the same findings is wholly immaterial. It follows, therefore, that plaintiff's contention that time was of the essence of the contract was not proved and that, even had there been a definite time for completion, the conduct of the plaintiff was such as to waive performance within that time.

It is plaintiff's earnest plea, however, that, in June, 1947, it discovered for the first time that defendant had never intended to attempt to complete the contract within the estimated date. In other words, it claims that, though the date of completion was only estimated and even though it cooperated with defendant to procure, after that date, further deliveries of machinery and equipment, it was deceived by the fact, as it contends, that defendant actually knew at the time of execution of the agreement that it could not deliver within the estimated date and never intended to do so and that, thereby, plaintiff was defrauded into advancing the $75,000. The evidence upon this issue is sharply controverted. The officers of plaintiff testified that the representatives of defendant admitted the averment in a conference in Boston in August, 1947, and in a letter written by defendant to plaintiff in June, 1947. One of defendant's officers died before the trial, and the other, who had nothing to do with the negotiations leading up to the contract, denied that he had any such knowledge or that defendant had any intent to deceive.

 The short answer to this controversy lies in the fact that the court expressly found that defendant did not intend to deceive and, indeed, did not deceive plaintiff in any respect. When we remember that the burden of proof is upon the one alleging fraud to prove the same by clear and convincing proof and that the court, in view of the evidence, found that there was no deceptive intent, it is apparent that the finding of the trial court that there was no fraud must prevail.

The other theory urged by plaintiff as justification for rescission is embraced in its averment that defendant unreasonably demanded some $10,000 in payment for extras and an extra 5% of the contract price because of increased cost of material and labor, under the escalator clause. True it is that defendant's counterclaim to recover for these items has been waived and abandoned, but this does not dispose of the question of whether the claims made were so unreasonable on defendant's part as to permit plaintiff to rescind.

 The evidence bearing upon this issue is likewise in dispute. However, it appears from the testimony of the chief accountant for defendant that his employer was compelled in the late summer in 1946, to enter into a new labor contract with its employees which increased all wages 8¢ an hour, entailing a direct labor increase in production costs of 6⅔%, under defendant's cost accounting system, and that defendant added the resulting proportionate share of its overhead, so that the net result was a 10⅔% increase in cost over and above that estimated. The witness testified also as to added cost of materials, that the New England Trawler Equipment Company increased its original estimate on the equipment furnished defendant for installation on the ship by $2,301.75 and that General Electric Company likewise increased the cost of the generator it supplied. Without discussing further details in this respect, it is clear from the testimony that the court was fully justified in concluding that the employment of the escalator clause, inserted in the contract in order to protect defendant from increases in costs of material and labor incurred during the progress of the work, was entirely justified. Indeed, in view of the evidence, we do not see how any other finding could properly have been made.

 The evidence as to extras also was in sharp controversy. The auditor testified that he kept defendant's accounts of costs; that, in the usual course of business, a memorandum was given him as to extras; that various changes were made, at the request of the president of plaintiff, entailing additional charges, and that the charges were entered accordingly upon the books of the company. It would serve no purpose to

discuss this evidence in further detail. Certain necessary changes plaintiff admitted having requested; certain others it denied responsibility for. Suffice it to say, that the evidence clearly sustains the court's finding that defendant did furnish extra material and supplies, for which it was entitled to recover, in addition to the work contracted for in the original contract, and that the facts were such that the increased costs due to increased cost of labor and material justified its demand under the escalator clause. In other words, in a case highly controverted, in which the evidence is in sharp dispute, the court has found as a fact that plaintiff proved no fraud.

Plaintiff insists, however, that the weight of the evidence with respect to one crucial fact is such as to justify this court in holding that the findings as to fraud were clearly erroneous. It points to the fact that in its complaint it charged in paragraph 18 that it had demanded that the $75,000 be returned, and that in its answer, defendant admitted the demand, though at the trial it was denied. Paragraph 18 of the complaint averred that notice of rescission had been served upon defendant because of breaches which plaintiff claimed defendant had committed and that plaintiff "has made demand upon the defendant for return of the consideration paid thereunder." In the original answer defendant replied that it "admits the demand alleged but otherwise denies the allegations of paragraph 18"; the amendment to the answer contains substantially the same language.

■ The court found upon the evidence that plaintiff had never made a demand. The apparent inconsistency of the finding with the admission in defendant's answer, plaintiff earnestly insists, is sufficient to impeach the entire finding, which was to the effect that plaintiff had never given defendant notice of rescission and had not demanded the return of the money. To us, it seems clearly immaterial whether a demand for return of the money advanced was made or not. The court has found the facts to be such that, even if a demand had been made, there was no necessity that defendant comply with it, for the court expressly found that there was no evidence to justify a finding that defendant had ever intended to deceive or had in fact deceived, and that no one of the grounds upon which plaintiff had claimed it was entitled to rescind was sustained by the evidence. Consequently, inasmuch as it could not rescind, whether it demanded return of the $75,000 was wholly immaterial.

■ From our examination of the record, it is clear that the District Court's findings were not clearly erroneous. We keep in mind that the evidence must be considered in the light most favorable to defendant. Viewed thus, it is convincing that time was not of the essence of the contract. The wording of the instrument itself completely negatived such a premise, for the date of completion was, expressly, only an "estimated" one. The only obligation of defendant was to exercise its best efforts to complete by that date. It was delayed by its own suppliers, without fault upon its part, as to some of whom plaintiff had cooperated with defendant in persuading them to contract to furnish defendant materials and equipment. It prosecuted the work with diligence, but, because of the delays encountered, was unable to procure and install equipment and machinery to completion until long after the estimated date of delivery. The delay was due to causes beyond defendant's control. Plaintiff, at the time of a personal visit of its president to the shipyards in November, 1946, became fully aware of the stage of construction. Indeed, as early as July, 1946, it had been informed that dates of delivery of the diesel engine, the generator and the winch-generator would be delayed beyond the estimated date of completion. It knew that Cooper-Bessemer Corporation, General Electric Corporation and the New England Trawler Equipment Company had each reported, not only to defendant but also to plaintiff, that equipment had been unavoidably delayed and that compliance with other suppliers' contracts could not be attained in 1946. Yet, despite its knowledge in this respect, plaintiff encouraged defendant to

proceed to completion, indeed, cooperated in attempting to speed up supply of machinery and equipment and made no attempt to rescind and no complaint of the delay until the summer of 1947, when the ship was about to be completed. Only then did plaintiff assert deception in the original averment of time of delivery and deception in making false claims, both of which averments the court found, upon substantial credible evidence, to be without support.

A careful examination of this record is convincing that the plaintiff was disappointed in its arrangements for financing the purchase and that it was still trying to raise the balance of the purchase price in the late spring and early summer of 1947; that the bank in Portland had, apparently entirely reasonably, refused to extend its commitment ending December 31, 1946; that plaintiff contacted other banks and the RFC in attempts to finance, all without success. It appears, further, that as late as August 15, 1948, attorneys for the plaintiff wrote defendant that they had received word from their clients that every effort was still being made to purchase the vessel and that they "seemed confident that they will be able to obtain the proper financing to purchase the ship" which had then been offered to plaintiff at the price at which it was finally sold; that, on September 2, of the same year, the same attorneys wrote defendant that their client felt confident and certain that application for an RFC loan to purchase the ship was going through; that, on September 30, 1948, one of the attorneys for plaintiff wrote to defendant that finding a purchaser or getting anything like the financing required on the trawler "was not easy" and that "we have just been informed that RFC is about to authorize the financing requested." It would seem clear that had plaintiff been able to finance the balance of the purchase price of the ship at any time subsequent to January 1, 1947, there would have been no lawsuit.

The judgment is affirmed.