Jacquelyn K. GREINER, by her next friend, John Greiner, Plaintiff-Appellee,

v.

CHICAGO AND EASTERN ILLINOIS RAILROAD COMPANY, Defendant-Appellant.

No. 15336.

United States Court of Appeals Seventh Circuit.

May 4, 1966.

Robert J. McPeak, Terre Haute, Ind., for appellant.

Thomas H. Hicks, Ralph Berry, Terre Haute, Ind., Mann, Mann, Chaney, Johnson & Hicks, and Berry, Kincade & Miller, Terre Haute, Ind., of counsel, for appellee.

Before DUFFY, KNOCH and KILEY, Circuit Judges.

KNOCH, Circuit Judge.

This action was brought in the United States District Court to recover damages for personal injuries suffered by the minor plaintiff-appellee, Jacquelyn K. Greiner, in a collision between the automobile in which she was riding and a locomotive of the defendant-appellant, Chicago and Eastern Illinois Railroad Company, at an intersection of highway and railroad track within the city limits of Terre Haute, Indiana.

The defendant does not attempt to impute any contributory negligence to the minor plaintiff, but attributes the accident solely to the negligent operation of the automobile by its driver, the plaintiff's deceased mother.

The cause was tried by the District Court sitting without a jury. The Court found, by resolving the disputed issues of fact, that the accident was occasioned by the action of the defendant's switchman who negligently motioned plaintiff's mother to drive across the main line crossing in the face of operating flasher signals when the defendant's locomotive was actually approaching. The Court found that he then gestured to her to stop and to back up, but that she was unable to do so. This appeal is taken from

judgment entered for the plaintiff. The defendant contends that errors were made in ruling on the evidence, that the findings and judgment are contrary to the physical evidence, that the conclusions and judgment are contrary to the law and the evidence and that the District Judge included an improper element in assessing damages.

The plaintiff's mother drove toward the tracks from the northwest on Lockport Road at about forty miles per hour, according to the testimony of Kenneth Kisner who was driving an automobile immediately ahead of her. The train was coming from the south on the westerly track or main line. Mr. Kisner stopped at the crossing. The plaintiff's car stopped behind him. The flasher lights were operating. He said that he waited about two minutes. An engine cleared the crossing on a switch track, described by Mr. Kisner as "the second track over." A man got off the engine, and, standing between the two tracks, waved Mr. Kisner across, although the lights were still flashing. He saw the same man wave the automobile behind him across, and saw that automobile move forward five or six feet. Then Mr. Kisner saw the train coming from the south on the main or west line and, in his rear view mirror, saw the man gesture to the car behind him to back up. He did not see or hear the impact and did not know of the collision until he had gone about two blocks, had turned back, had seen the commotion at the railway crossing, had returned and found that the car behind him had been involved in a collision with the train.

The man who got off the engine which cleared the crossing and who waved Mr. Kisner across was Oliver B. Perrill, the defendant's switchman. He testified that he motioned only the first car to cross while the lights were off for a second or two as a result of his engine having cleared the crossing; that they came on again when tripped by the approach of the train coming from the south; that he then gestured to the plaintiff's automobile which was coming up the road about 50 yards away from him when he first saw it. He said he directed it to stop, and then to back up because it had stopped too close to the tracks, that the driver instead of backing up as directed had jumped forward about three feet onto the center of the track, and a woman got out of the driver's side of the car as the train approached from 800 to 1000 feet south of the crossing, with its locomotive whistle sounding. As far as Mr. Perrill could tell, the woman was trying to get the children out of the automobile.

Thomas William Robinson, the engineer of the approaching train, testified that his whistle was blowing for the crossing and his engine bell was ringing continuously. He saw the plaintiff's car approach the crossing, stop two or two and one-half feet west of the track and then as he started to apply the brake, the automobile jumped onto the crossing with its front wheels in the center of the track just as he was about 1000 feet south of the crossing. He saw a woman standing beside the car just before the impact. He saw no signals given by the switchman to the driver.

The fireman, Ronald Larry Stemely, testified that the locomotive was about 1400 feet from the crossing when he saw the automobile stop two and one-half feet from the west rail and then lunge forward five or six feet to the middle of the track. He also testified that he saw a woman get out of the car, and that he had seen Switchman Perrill motioning the driver of the car to stop.

The head brakeman, Robert Siddall, also testified that he saw the automobile close to the track and then on the track. He saw no other automobile at all.

The defendant argues that the testimony of the witnesses, and the photographs of the site all show that the sound and visual signals of the train and the crossing were in operation, and that the switchman did not motion the plaintiff's car across, but on the contrary gestured to it to stop and to back up.

Much is made of the descriptions of gestures in the testimony of Mr. Kisner. At one point, the court described for the

record Mr. Kisner's imitation of the manner in which the switchman was using his hands. The Court said:

> Let the record show that the witness held his hands up above his head with the palms facing away from him, with a movement of the hands going back and forth above the head, motion for oncoming travel.

The defendant argues that holding the palms out is clearly a signal to stop, and that Mr. Kisner's testimony corroborates that of the switchman who denied waving the plaintiff's automobile forward. The argument however, loses its force when the quotation above is placed in context.

Q. Will you show the Court, by motions, what the switchman did— Strike that—what the man who got off the engine did when he motioned you across:

A. (Gesturing.) Like that.

Q. And what did he do when he motioned the Olds behind you—

The Court: Let the record show that the witness held his hands up above his head with the palms facing away from him, with a movement of the hands going back and forth above the head, motion for oncoming travel.

Q. (By Mr. Hicks.) What was the motion which you saw him give the car behind you:

A. He—come on around like that,— (gesturing).

The Court: Do that again.

The Witness: I was in the middle of the track and he went like this, motioning for her to come on across.

The Court: With one hand for her.

The Witness: Yes.

The Court: All right.

It is at least equally reasonable to conclude that when the Court interrupted the question "And what did he do when he motioned the Olds behind you—" the Court was not describing the answer to the interrupted question but the answer to the previous question "Will you show the Court, by motions, what the switchman did—Strike that—what the man who got off the engine did when he motioned you across?" to which the witness answered "(Gesturing.) Like that."

The second question was then completed, "What was the motion which you saw him give the car behind you?" to which the answer "He—come on around like that,—(gesturing)." was given, followed by the clarifying questions of the Court, ending with the witness saying " * * * motioning for her to come on across." The only description the record includes, is the Court's comment: "With one hand for her."

In any event, the Trial Court who resolved the disputed issue of fact saw the gestures. He did not rely, as we must, on a mere verbal description of them. Similarly he saw and observed the demeanor of Mr. Kisner on the stand and was surely better able to determine the accuracy of his observations and recollections and to decide whether the "inviting" signal Mr. Kisner described and illustrated was in fact intended, as Mr. Kisner testified, for the car behind him, or was, as defendant contends, directed at Mr. Kisner himself alone, during a few seconds pause in the flashing lights. Mr. Kisner testified that they were in continuous operation.

Defendant argues that there is no evidence for the findings that plaintiff's mother stopped at the tracks in obedience to the warning lights rather than the sound of the oncoming train, if she did stop prior to the switchman's signal to stop. Defendant also asserts that there is no evidence to support a finding that she was unaware of the approaching train in view of the admitted operation of the flashing signals. The Trial Court could have based the first finding on Mr. Kisner's statement that he stopped in response to the flashing lights, being unaware of the approaching train, and that plaintiff's car stopped behind him. Mr. Kisner testified that he did not become aware of the approaching train until after he had seen the signal of the switchman inviting plaintiff's mother to cross the tracks. Both drivers must have seen the flashing lights in operation

before the passing of the first engine on the switch track, from which Mr. Perrill had descended. It was more reasonable to believe that the plaintiff's mother attributed the continuing flashing lights to the presence of that first engine on the switch track, particularly, in the light of the switchman's gesture to cross, rather than to believe that entirely independent of gestures or signals from the switchman, she deliberately drove herself and children into the path of an oncoming train.

We cannot substitute our judgment for that of the Trial Court on issues of fact and credibility, where, as here, we find there is substantial evidence to support the factual findings of the Trial Judge. Rule 52(a) Federal Rules of Civil Procedure. Our review of the evidence leaves us with no conviction that any mistake has been committed by the Trial Court. The Sirius Star v. Sturgeon Bay Shipbuild. & Dry Dock Co., 7 Cir., 1952, 196 F.2d 479, 481; United States v. Grissler, 9 Cir., 1962, 303 F.2d 175, 176; Alster v. Alster and Associates, Inc., 7 Cir., 1963, 319 F.2d 54, 55.

Although there is no attack on the damages of $27,500 as excessive in amount, the defendant asserts that the Trial Judge included attorneys' fees as an element in computing the damages because of an oral comment that he was "bearing everything in mind, taking into account the fact that the attorneys have to be paid * * *." He also spoke at length about the extent of the injuries and the likelihood of a jury awarding the same amount. His Findings of Fact deal with the plaintiff's life expectancy, her injuries, her past and future pain and suffering, and her permanent physical impairment. Nothing is said about attorneys' fees. We may not treat the Trial Court's oral comment as a special finding that modifies his formal Findings of Fact. The latter must be viewed as controlling. United States v. Flower, 8 Cir., 1939, 108 F.2d 298, 301; Atlas Beverage Co. v. Minneapolis Brewing Co., 8 Cir., 1940, 113 F.2d 672, 676.

Defendant asserts that it was error to admit into evidence an alleged ordinance of the City of Terre Haute limiting train speed to thirty miles per hour within the city because proper publication of this ordinance had not been made. It was stipulated that the defendant's locomotive was traveling fifty-five miles per hour at the time of the impact between it and the automobile.

At worst, this was harmless error. There was no jury. The Trial Court expressly refrained from making findings of negligence based on speed. Finding of Fact 11, reads in part:
"That it is unnecessary for the Court to find facts as to the other charged negligence of defendant, such as speed."

There is nothing to show that the Trial Judge relied on anything but proper evidence in arriving at his decision. Absent a clear showing to the contrary, we will assume that the Trial Court correctly relied only upon proper evidence. Rowe v. Gatke Corp., 7 Cir., 1942, 126 F.2d 61, 67; Brubeck v. Pennsylvania R.R. Co., 7 Cir., 1965, 346 F.2d 238, 241.

Defendant's motion for a new trial on the ground of newly discovered evidence (denial of which is cited as error) was supported by the affidavit of a claim agent for defendant in which the evidence of the new witness is not revealed. The affidavit merely states that a transcript of the testimony of this witness, "whose testimony conclusively demonstrates that the railroad was not at fault, * * * is available for the Court's inspection." The affiant says that his first knowledge of this witness arose from an interview in the course of a "more extensive canvass" after the trial. He had made a neighborhood canvass in July, 1964. The trial occurred in April, 1965. There is nothing to show that this newly discovered evidence could not have been discovered by the use of due diligence prior to trial. We do not know what this evidence is. Therefore, we cannot say whether it would be of

such importance as to necessitate a different conclusion to the trial in order to justify allowance of the motion. Rome Grader & M. Corp. v. J. D. Adams Mfg. Co., 7 Cir., 1943, 135 F.2d 617, 621; Chicago & W. I. R. Co. v. Chicago & E. R. Co., 7 Cir., 1944, 140 F.2d 130, 131. We find no abuse of discretion in the District Court's denial of a new trial. The judgment of the District Court is affirmed.

Affirmed.