**In re Frampton Mikell HARPER, Debtor.**

**Peter RUBEN, Plaintiff,**

**v.**

**Frampton Mikell HARPER, Defendant.**

**Bankruptcy No. 95–71225.**
**Adv. No. 95–8285.**

United States Bankruptcy Court,
D. South Carolina.

Jan. 8, 1996.

---

W. Andrew Gowder, Charleston, SC, for Plaintiff.

Frampton Mikell Harper, Beaufort, SC, Pro Se Defendant.

## ORDER

Chapter 7

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Debtor's Motion to Dismiss or in

the Alternative, Motion for Summary Judgment (the "Motions"). After reviewing the pleadings and the evidence presented along with arguments of counsel for the Plaintiff and the Debtor, who is appearing pro se, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure.[1]

## FINDINGS OF FACT

1. On March 9, 1995, Frampton Mikell Harper (the "Debtor") filed a voluntary Chapter 7 bankruptcy petition. Robert F. Anderson (the "Trustee") is the Debtor's duly appointed Trustee in Bankruptcy. The Debtor's first meeting of creditors pursuant to 11 U.S.C. § 341[2] was conducted on April 21, 1995. According to the Notice of the Commencement of Case issued on March 14, 1995, the deadline for filing Complaints objecting to discharge or dischargeability was originally June 20, 1995.

2. On May 23, 1995, the Trustee filed a Motion for Extension of Time to File Complaints Objecting to Discharge or Dischargeability of Particular Debts. This motion, as supplemented in the memorandum attached, moved for an extension of the time for "filing by any party (1) complaints objecting to discharge pursuant to 11 U.S.C. § 727, and (2) complaints seeking exceptions to discharge pursuant to 11 U.S.C. § 523 ... of approximately sixty (60) days, until August 20, 1995."

3. There were no objections filed to the Trustee's motion.

4. A hearing was held on the motion for extension on June 14, 1995 in Charleston, South Carolina. The Court's Appearance Sheet reflects that the Trustee was the only interested party in attendance.

5. At the June 14, 1995 hearing, the Trustee stated that he was "requesting an extension through August 20, 1995, which is about sixty days after the regular conclusion of the time for the filing of such". Without opposition, the motion for extension was granted and the Trustee was instructed to prepare a proposed order granting the motion.

6. The proposed order from the Trustee was received by the Court on August 16, 1995, executed on August 18, 1995 and entered into judgment on August 21, 1995 ("August 21, 1995 Order"). The August 21, 1995 Order states in part "[i]t appears that such extension of sixty (60) days is just, no objections to such extension being entered, it is therefore Ordered, Adjudged and Decree that the deadline for filing complaints objecting to discharge, or for the determination of the dischargeability of a particular debt under 11 U.S.C. § 523 and/or § 727 be, and it herewith is extended, for a period of sixty (60) days from the date of this Order".

7. The August 21, 1995 Order was served by mail by the Clerk of the Bankruptcy Court on all parties in interest including creditors, the Debtor and the Trustee, on August 21, 1995. No appeal of the Order or motion for reconsideration was filed by any party including the Debtor or Trustee. No party at any time prior to these Motions notified the Court that they believed the August 21, 1995 Order to be in error.

8. On October 17, 1995, three days prior to the last day to file complaints pursuant to the August 21, 1995 Order, the within adversary complaint seeking a denial of the dischargeability of a debt to the Plaintiff pursuant to § 523(a)(6) was filed.

9. The Plaintiff, as a creditor in this case, relied in good faith upon the August 21, 1995 Order which extended the time to object to dischargeability until October

---

1. The court notes that to the extent any of the following *Findings of Fact* constitute *Conclusions of Law*, they are adopted as such, and to the extent any *Conclusions of Law* constitute *Findings of Fact*, they are so adopted.

2. Further references to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, shall be by section number only.

20, 1995, sixty (60) days after the entry of the August 21, 1995 Order.

10. On November 13, 1995, the Debtor filed the within Motion to Dismiss alleging that the Complaint was untimely as it was filed more than sixty (60) days following the first date set for the meeting of creditors. In the same pleading, the Debtor alternatively filed a Motion for Summary Judgment on the grounds that the underlying District Court judgment lacked a finding of "willfulness" or "malicious" injury.

11. At one point during the hearing on the within Motions, the Debtor indicated that he had no objection to the Trustee obtaining an extension on his behalf and that of creditors through August 20, 1995 and further that he did not read the August 21, 1995 Order as applicable to any party other than the Trustee and did not object to that Order applying to the Trustee.

## CONCLUSIONS OF LAW

### I. MOTION TO DISMISS

Rule 9006(b)(3) of the Federal Rules of Bankruptcy Procedure[3] states that "[t]he court may enlarge the time for taking action under Rules 1006(b)(2), 1017(e), 3002(c), 4003(b), 4004(a), 4007(c), 8002, and 9033, only to the extent and under the conditions stated in those rules". Pursuant to Rule 4007, "[a] complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a) ... [o]n motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision."

The Supreme Court has made it clear that such motions for extensions of time must be made within the initial time period. *See, Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), regarding a motion under Rule 4003(b). Likewise in *In re Jeffrey,* 169 B.R. 25 (Bkrtcy. D.Md.1994), the Court in citing Rule 4007, has held that once the period for filing complaints to determine dischargeability of debt has expired without the filing of a motion to extend, the bankruptcy court is powerless to extend the deadline based upon a tardy motion.

However, in the within case, there is no dispute that the motion filed by the Chapter 7 Trustee for an extension of time to file discharge complaints pursuant to § 727 as well as an extension to file dischargeability complaints pursuant to § 523 was filed within the initial time period. While there is case law within the Fourth Circuit which questions whether a Chapter 7 Trustee has standing to seek an extension pursuant to Rule 4007, there were no objections to the motion of the Trustee and no party in interest appeared at the hearing to oppose the motion despite the motion's clear request that the extension was for the benefit of filings *"by any party "* and was to be applied both to the discharge and dischargeability deadlines. *Matter of Farmer,* 786 F.2d 618 (4th Cir. 1986). Based upon the lack of objection and appearance of any other party, the Court granted the Trustee's request at the June 14, 1995 hearing.

#### a. Standing

■ In *Farmer,* the Court of Appeals reversed the Bankruptcy Court's order which had overruled an objection by the debtors to a trustee's request for a second extension of time and held that a Chapter 7 trustee generally lacked standing to request an extension of time to file dischargeability complaints. However, in the instant case unlike in *Farmer,* the Debtor did not object to or appear at the hearing to oppose the request for extension and did not ask for reconsideration or appeal the Court's granting of an extension because of the trustee's lack of standing.[4] Furthermore, at one point in the

---

3. Further references to the Federal Rules of Bankruptcy Procedure shall be by reference to Rule number only.

4. Had there been a timely objection and had the Court denied the Trustee's request for an extension for creditors to object to dischargeability due to a lack of standing at the June 14, 1995 hearing, creditors would still have had time within the initial period up to June 20, 1995 to file motions seeking their own extensions.

hearing on the Motions, the Debtor confirmed that he had no objection to the Trustee's standing to obtain an extension for the benefit of creditors until August 20, 1995. The Debtor's only objection was to any extension for the creditor's benefit beyond that date.

Under the circumstances of this case, as distinguishable from *Farmer*, it would be unjust and inequitable to allow the Debtor to raise the defense of a lack of standing by the Trustee at this stage of the proceedings. Further support for this ruling is indicated by a recent 11th CIrcuit opinion with similar facts to the instant case. *In re Demos*, 57 F.3d 1037 (11th Cir.1995). In that case, the trustee filed a motion to extend the deadlines to file complaints to determine dischargeability and objections to discharge. One of the creditors in *Demos* relying upon the order granting the trustee's motion, filed a complaint pursuant to § 523 after the initial time period to file such a complaint had run, without filing his own motion for an extension of time. The 11th Circuit in finding that the creditor reasonably relied upon the trustee's motion, allowed the creditor's complaint to stand pursuant to the court's equitable powers under § 105. The 11th Circuit stated:

> If the bankruptcy court did not intend to grant creditors an extension of time—as the district court found—then the bankruptcy court made a mistake, and it should have exercised its equitable powers under Section 105 to allow [the creditor's] complaint to stand.

*In re Demos*, 57 F.3d at 1040.

### b. Timeliness of Complaint

■ The second issue raised by the Motions is whether under the circumstances of this case, a complaint objecting to dischargeability which was filed after August 20, 1995 should be allowed as timely.

There is no question that in his motion for extension and the accompanying memorandum as well as at the hearing, the Trustee specified that his request was for sixty (60) days beyond the original deadline, and that he was specifically seeking an extension until August 20, 1995. The record is equally clear that the Court granted the motion and in-

structed the Trustee to prepare an Order to that effect. For whatever reason a proposed Order was not submitted by the Trustee until August 16, 1995 and it reflected by its terms an extension "for 60 days from the date of (said) Order". These terms were different than requested in the Trustee's motion and at the June 14, 1995 hearing.

■ Just as clearly, before entering the August 21, 1995 Order, neither the Clerk of Court nor the Court noticed the difference in terms. The Court's written minutes of the June 14, 1995 hearing only reflect that the Trustee's motion was granted. Furthermore, as it is not the Court's usual practice, the Court did not review the transcript of the June 14, 1995 hearing before considering such a routine order as the proposed order. The Court relied on the Trustee to comply with its instructions and prepare the correct order. The Trustee failed to present a proposed order which correctly represented the Court's ruling at the June 14, 1995 hearing. While the Trustee in his affidavit has stated that it is his usual practice to submit extension orders which provide for "60 days from the date of the (extension) Order", such is not an acceptable practice unless the Trustee expressly requests such extension in his pleadings and at the hearing.

■ Despite the difference in terms, any oral ruling or comments made by the Court at the hearing would have been preempted by the formal order entered on August 21, 1995. *See, Davis v. Rhay*, 156 F.Supp. 114 (E.D.Wash.1957) (an oral or written opinion by a judge announcing his decision and giving the reasons therefor is tentative rather than final; if there is any conflict between the opinion and the formal findings of fact, conclusions, and judgment, the latter govern), *Hong v. United States*, 363 F.2d 116 (9th Cir.1966) (since the District Court made and entered formal and detailed findings of fact and conclusions of law, the Court of Appeals would not and should not review statements appearing in the District Court's 'oral decision'), *Greiner v. Chicago and Eastern Illinois Railroad Company*, 360 F.2d 891 (7th Cir.1966) (the appellate court could not treat the trial court's oral comment as a

special finding that modifies his formal Findings of Fact; the latter must be viewed as controlling).

The ultimate issue therefore before the Court on the Motion to Dismiss is not whether the difference in terms between the Order and the Hearing is a mistake made by the Trustee or by the Court, but rather the effect of such on the two parties to this proceeding. Specifically, the issue is whether the Plaintiff may reasonably rely on the extension of time provided by the August 21, 1995 Order or whether his complaint should be dismissed. Under the circumstances of this case, the Court finds that the Plaintiff and similarly situated creditors in this case must be able to rely on this Court's written order and, therefore, shall deny the Defendant's Motion to Dismiss.

In making this determination, as other courts have done in similar situations, the Court relies upon its equitable powers under § 105 to serve the interest of justice. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process".

While the Court has not found a Fourth Circuit opinion with the same facts as within and the *Demos* case, the *Farouki v. Emirates Bank International Limited*, 14 F.3d 244 (4th Cir.1994) opinion from the Fourth Circuit is very similar. In *Farouki*, the Fourth Circuit held that Rule 4004(a) does not preclude a bankruptcy court from exercising its equitable powers in extraordinary cases. In *Farouki*, the creditor filed a timely motion to extend the deadline to file a complaint objecting to discharge pursuant to § 727 and Rules 4004(a) and 9006(b)(3); however, due to car trouble, the creditor's attorney failed to attend the hearing and the Court denied the motion for lack of prosecution. A motion for reconsideration was filed by the creditor later that day. The motion

for reconsideration was granted. The Debtor appealed alleging that the time period of Rule 4004 is jurisdictional and therefore the court lacked jurisdiction to act upon the motion for reconsideration. Relying upon the 9th Circuit's BAP opinion of *In re Santos*, 112 B.R. 1001 (9th Cir. BAP 1990), the Fourth Circuit held that the deadlines for filing *dischargeability complaints* (emphasis added) and objections to discharge set forth in Rule 4007(c) and 4004(a) are not jurisdictional time limits. The Fourth Circuit held:

> Although the excusable neglect rationale may not be available to excuse a failure to file within the initial time period, we have found no authority suggesting that excusable neglect is not available to justify the grant of a motion for reconsideration filed on the same day that a timely filed motion for enlargement is denied. Such a rule would not be equitable.

*Farouki v. Emirates Bank International Limited*, 14 F.3d at 249.

The *Farouki* opinion was then cited in *Lust v. Burke*, 876 F.Supp. 1474 (D.Md.1994) by Judge Harvey from the District Court in Maryland to stand for the proposition that "Rule 4004(a) does not preclude a bankruptcy court from exercising its equitable powers in extraordinary cases." *Lust v. Burke*, 876 F.Supp. at 1487.

Because Rule 9006 allows the enlargement of the time period for motions pursuant to Rule 4004(a) as well as 4007(c), it would appear that the Fourth Circuit would follow the logic of the *Farouki* opinion under the facts of the instant case.

In another case with very similar facts, the New Hampshire District Court in *In re Riso*, 57 B.R. 789 (D.N.H.1986) held that a bankruptcy court has the inherent equitable power to correct its own mistakes to prevent an injustice. In that case, after granting a motion which requested an extension until October 27, 1984 to object to discharge, the bankruptcy court staff erroneously mailed a routine order which set a different deadline of December 3, 1984. The subject creditor relied on the erroneous order and filed his complaint on November 29, 1984. In refusing to dismiss the complaint as untimely, the

Court confirmed the Bankruptcy Court's equitable power:

> The mistake in this case was a mistake of "the court" and should be corrected by the same in the absence of any substantial prejudice to any party.

*In re Riso,* 57 B.R. at 792. Likewise, other courts have confirmed the bankruptcy court's equitable power to prevent an injustice because of reliance on a deadline set by an error made by the bankruptcy court. *See, In re Themy,* 6 F.3d 688, 689 (10th Cir.1993) (bankruptcy court could accept late-filed complaint by creditor who had relied on bankruptcy court's notice setting incorrect deadline and "[a]lthough the provisions of Rules 4004 and 4007 are strictly enforced, courts have almost uniformly allowed an out-of-time filing when the creditor relies upon a bankruptcy court notice setting an incorrect deadline"), *In re Isaacman,* 26 F.3d 629 (6th Cir.1994) (bankruptcy court should exercise its equitable powers and permit non-dischargeability complaint to proceed if creditor reasonably relies on bankruptcy court's erroneous statement of second bar date, and creditor reasonably relied on court clerks erroneous oral statement of bar date; bankruptcy court abused its discretion in dismissing creditor's complaint as untimely) and *In re Anwiler,* 958 F.2d 925 (9th Cir.1992), cert. denied, 506 U.S. 882, 113 S.Ct. 236, 121 L.Ed.2d 171 (1992) (bankruptcy court could use its equitable powers to permit late filing of dischargeability complaint inasmuch as creditors reasonably relied on bankruptcy court's conflicting notices with respect to bar date). Also, see *In re Kennerley,* 995 F.2d 145 (9th Cir.1993), *In re Ginn,* 179 B.R. 349 (Bkrtcy.S.D.Ga.1995), *In re Schwartz and Meyers,* 64 B.R. 948 (Bkrtcy.S.D.N.Y.1986), *In re Reichmeier,* 130 B.R. 539 (Bkrtcy. W.D.Mo.1991), *In re Schoofs,* 115 B.R. 1 (Bkrtcy.D.Dist.Col.1990) and *In re Sibley,* 71 B.R. 147 (Bkrtcy.D.Mass.1987).

Despite receiving the August 21, 1995 Order, the Debtor did not seek a reconsideration, file an appeal, or, by any other timely means, raise the error to the Court's attention. In bankruptcy courts, as in other courts, the doctrine of law of the case mandate that parties are bound by prior, unappealed orders of the court. *See, In re Russell,* 148 B.R. 564 (Bkrtcy.E.D.Ark.1992) (the debtor is bound by prior, unappealed order of the court) and *In re Olmstead,* 1995 WL 495892 (Bkrtcy.Idaho 1995) (debtor bound through law of the case to prior, unappealed order disallowing homestead exemption). At the hearing on the Motions, the Debtor indicated that he did not appeal or otherwise act because he did not understand the August 21, 1995 Order to provide any extension to creditors. While the Order did not state with particular terms the beneficiaries of the extension, when considering the terms of the motion for extension which expressly referred to "complaints to be filed by any party" as well as the Order's reference to § 523 as well as § 727, the Court does not accept the explanation of the Debtor, an attorney by training, and finds that the August 21, 1995 Order clearly applied to extensions to creditors to object to discharge and dischargeability. The Court finds that the Debtor should not now be able to raise such issues that were clearly available after his receipt of the August 21, 1995 Order.

In this case, the Court has weighed the prejudice to be suffered by the Debtor against the prejudice to the Plaintiff Creditor if the Motion to Dismiss is granted. It appears to the Court that the Debtor's desire to have this adversary proceeding dismissed summarily on a possible procedural defect is far outweighed by the prejudice to the Creditor Plaintiff if the Complaint is dismissed despite his reasonable reliance upon an unappealed and final order of this Court. It appears that justice can therefore only be served by allowing both parties to proceed to a substantive adjudication on the dischargeability complaint.

## II. MOTION FOR SUMMARY JUDGMENT

The Alternative Motion for Summary Judgment filed by the Debtor alleges that the Complaint fails to allege any willful and malicious injury by the Debtor to the Plaintiff within the meaning of § 523(a)(6) and that the underlying judgment on which the § 523 complaint is based upon does not make a finding of willful and malicious injury.

■ Summary judgment is appropriate in those cases in which there is no genuine issue of material fact. Rule 7056(c). Summary judgment should be granted if "there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511. Since it is the movant who bears the onus of establishing his entitlement to summary judgment, his opponent enjoys the benefit of all favorable inferences from evidence proffered, and the facts asserted by the nonmoving party, if adequately buttressed by evidentiary material, are to be taken as true. *Abraham v. Graphic Arts Intern. Union,* 660 F.2d 811, 212 U.S.App.D.C. 412 (1981).

■ In support of his Motion, the Debtor alleges that the Order entered by the Honorable Robert S. Carr, United States Magistrate Judge on August 31, 1994 in civil action proceeding number 9:92–0951–19AJ and captioned Peter Ruben versus F. Mikell Harper and Randall M. Chastain and civil action proceeding number 9:92–1471–19AJ and captioned Denny Allen and The International Yachting Group, Inc. versus F. Mikell Harper does not make a specific finding of malice, willfulness or recklessness that would be necessary to an action pursuant to § 523. However, as recently stated by the Fourth Circuit, such a finding does not need to be limited to this exact terminology.

"Malice," however, does not mean the same thing in Section 523(a) that it often does in other contexts. A debtor may act with malice even though he bears no subjective ill will toward, and does not specifically intend to injure, his creditor. Hence, a debtor's injurious act done "deliberately and intentionally in knowing disregard of the rights of another", i.e. a creditor, is sufficiently willful and malicious, and prevents discharge of the debt.

*In re Stanley,* 66 F.3d 664 (4th Cir.1995) (citations omitted).

■ Essentially the Debtor's argument is based upon a res judicata or a collateral estoppel defense. "[T]he difference between res judicata and collateral estoppel is that res judicata forecloses all issues that could have been litigated previously, while 'collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit.' *Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979)." *In re Lucas,* 186 B.R. 67 (Bkrtcy. E.D.Va.1995). Collateral estoppel applies only to those issues which were actually, completely and necessarily litigated in a prior action between the parties, thereby barring relitigation of specific issues previously determined by a court of competent jurisdiction. *Combs v. Richardson,* 838 F.2d 112 (4th Cir.1988).

The August 31, 1994 Order on the issue of liability and the subsequent March 9, 1995 Order from Judge Carr on the issue of damages are based upon a negligence cause of action. While the amended complaint in the District Court litigation sounds in negligence and is captioned as a negligence cause of action, the allegations of the complaint raise the issue of recklessness, but such are not mentioned in the Orders.

■ The determination that this Court must make is whether the issues of willfulness and maliciousness could have been litigated previously or whether they were actually and necessarily decided in the District Court litigation. "[T]he bankruptcy court must determine whether the issue was actually litigated 'with particular care.'" *In re Raynor,* 922 F.2d 1146 (4th Cir.1991). As Judge Adams of the Bankruptcy Court of the Eastern District of Virginia recently stated:

This Court interprets the mandate of the *Raynor* and *Combs* decisions to require an analysis of whether the prior court proceedings involved a complete and thorough presentation of the issues presented in the dischargeability complaint and whether there was a thoughtful determination of those issues by the (state) court.

*In re Stankovich,* 171 B.R. 27 (Bkrtcy. E.D.Va.1994).

The only documents relating to the District Court litigation presented to this Court were the two referenced Orders of the District Court along with the amended complaint in that litigation, which was attached to the § 523 Complaint. Neither party presented a transcript of the District Court trial or an Order relating to the allegations of willful or malicious injury which would allow this Court to make a determination of whether the issue has been previously litigated. Therefore, viewing the evidence before the Court in the light most favorable to the Plaintiff, and without ruling with prejudice upon the res judicata or collateral estoppel effect of Judge Carr's Orders, the Court finds that the Debtor has failed at this time to meet his burden of coming forward with proof of the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321, 106 S.Ct. 2548, 2551–52, 91 L.Ed.2d 265, 273 (1986).

## CONCLUSION

Based upon the motion for extension by the Trustee, the transcript of the June 14, 1995 hearing, and the August 21, 1995 Order and the numerous references to an extension of time for creditors to file dischargeability complaints pursuant to § 523, and the creditors reasonable reliance upon this Order, it would appear that pursuant to the equitable powers of the Court as conferred upon it by § 105, the Debtor's Motion to Dismiss must be denied. Additionally, the Alternative Motion for Summary Judgment must similarly be denied for the failure of the Debtor to demonstrate an absence of any genuine issues of material fact. For the reasons stated within, it is therefore,

**ORDERED,** that the Motion of the Debtor to Dismiss and the Alternative Motion for Summary Judgment are denied.

**AND IT IS SO ORDERED.**