**Regina LUST, et al. Plaintiffs**

v.

**Michael BURKE, et al. Defendants.**

**Civ. No. H–93–40.**

United States District Court,
D. Maryland.

Feb. 16, 1994.

**1477**

D. Jay Hyman, Damascus, MD, for plaintiffs.

Ralph Gordon, Edmund Law and Gordon & Simmons, Frederick, MD, for defendant Burke.

Stephen Field, pro se.

Keith A. Rosenberg, Morton A. Faller, and Meyer, Faller, Weisman & Rosenberg Washington, DC, for defendant Matese.

Michael R. Goodstein and Collier, Shannon, Rill & Scott, Washington, DC, for David DeSanto.

Gregory D. Haight and Haight, Tramonte, Sicillano & Flask, Vienna, VA, for defendants Dorothy and Stephen DeSanto.

Peter D. Greenspun, Fairfax, VA, for defendant Naftal.

*MEMORANDUM OPINION*

ALEXANDER HARVEY, II, Senior District Judge.

This civil action was filed in this Court on January 5, 1993. Suit was brought by 60 named plaintiffs against 14 named defendants, including an accounting firm and a law firm. Count I of the complaint alleged that each of the defendants had violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, *et seq.* Count II alleged a violation of the Lanham Act, 15 U.S.C. § 1125(a), and Count III sought a recovery under a theory of common law fraud.

Eleven of the 14 defendants responded to the complaint by filing motions to dismiss pursuant to Rule 9(b), Rule 12(b)(5), Rule 12(b)(6) and Rule 12(c), F.R.Civ.P. A hearing on all pending motions was held in open Court on May 21, 1993. After hearing argument, the Court, in an oral opinion, granted all pending motions to dismiss, with leave granted to plaintiffs to file an amended complaint and to name additional defendants. Plaintiff's complaint was dismissed as to all defendants without prejudice as to Counts I and III but was dismissed with prejudice as to all defendants as to Count II. Plaintiffs were permitted to include in their amended complaint RICO claims asserted under 18 U.S.C. § 1962 *et seq.,* provided that plaintiffs filed with their amended complaint a RICO Fact Statement. The Court's rulings were contained in an Order dated May 21, 1993, which set forth in detail the matters to be included by plaintiffs in their RICO Fact Statement.

On July 6, 1993, plaintiffs filed an amended complaint and a RICO Fact Statement.[1] The amended complaint asserts claims on behalf of 72 named plaintiffs against 9 named defendants.[2] All nine defendants are individuals. The amended complaint contains six counts and seeks treble and other damages from all defendants. Count I alleges a RICO violation under § 1962(c), and Count II alleges a conspiracy to commit a RICO violation under § 1962(d). Count III seeks a recovery from each of the defendants except Dorothy DeSanto under a theory of fraud while acting in a fiduciary capacity, and Count IV seeks a recovery from each of the defendants except Dorothy DeSanto under a theory of fraud. Counts V and VI relate only to defendant Michael Matese. In Count V, plaintiffs request that this Court deny a discharge in bankruptcy to defendant Matese pursuant to 11 U.S.C. § 727(a)(4), and in Count VI, plaintiffs ask the Court to deny the dischargeability, pursuant to 11 U.S.C. § 523(a)(4), of certain debts allegedly owed to plaintiffs by defendant Matese.

Six of the defendants have responded to the amended complaint by filing motions to dismiss, namely defendants Robert Naftal,

---

1. The amended complaint is 73 pages in length and contains 478 paragraphs. The RICO Fact Statement is 64 pages in length and contains 428 paragraphs. An attachment of 16 pages has been included with the RICO Fact Statement.

2. Seventy individuals and two retirement plans are named as plaintiffs.

Michael Burke, Stephen DeSanto, Dorothy DeSanto, Stephen Field and Michael Matese, and defendant David DeSanto has filed a motion for partial summary judgment. At plaintiffs' request, an Order was entered on November 23, 1993 dismissing plaintiffs' claims against defendant Rodney Smith and defendant Patricia Boyer without prejudice. As of January 4, 1994, 70 plaintiffs and 7 defendants remained in the case.[3]

Voluminous memoranda of law and numerous exhibits have been filed by the parties in support of and in opposition to the pending motions to dismiss or for partial summary judgment. A hearing on all pending motions was held in open Court on November 24, 1993. For the reasons to be stated hereinafter, the motions to dismiss of defendants Naftal, Burke, Field and Matese will be denied; the motions to dismiss of defendant Dorothy DeSanto and defendant Stephen DeSanto will be granted, and the motion for partial summary judgment of defendant David DeSanto will be denied.

I

*Background*

Plaintiffs are investors who between 1982 and 1993 invested more than $3 million in real estate limited partnerships, mortgages, trusts and other similar vehicles allegedly sold, syndicated and/or controlled by defendants or by entities controlled by defendants. Plaintiffs allege that most of their investments were placed through or solicited by defendants Naftal, Matese, David DeSanto and Smith, whom plaintiffs refer to collectively as "the Planners."[4]

This complex case has become further complicated by the fact that four of the named defendants are presently involved in bankruptcy proceedings. Defendants Naftal, Matese, David DeSanto and Field were not named as defendants in the original complaint because of their then pending bankruptcy proceedings and because of the applicability of the automatic stay provisions of 11

U.S.C. § 362(a). These four individuals have now been named as defendants in the amended complaint, and their motions to dismiss or for partial summary judgment are pending before the Court.

On September 26, 1991, an involuntary petition in bankruptcy was filed against defendant Robert Naftal in the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division. *In re Robert S. Naftal,* Case No. 91–14109–AB. Naftal later consented on May 12, 1992 to the entry of an order for relief. On January 6, 1992, defendant David DeSanto filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division. *In re David A. DeSanto,* Case No. 92–10052–AB. On February 3, 1992, defendant Matese filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Maryland. *In re Michael J. Matese,* Case No. 92–1–0634–SD. On October 13, 1992, defendant Field filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division. *In re Stephen Field,* Case No. 92–14864–AT.

Plaintiffs contend that the automatic stay provisions of § 362(a) have been lifted as to them and that they are therefore entitled to proceed in this civil action with their claims against defendants Naftal, Matese, David DeSanto and Field. These assertions are disputed by some of these defendants and will be addressed hereinafter. Pursuant to the Report dated June 4, 1993 of Bankruptcy Judge E. Stephen Derby entered in the *Matese* bankruptcy case, an Order was entered by this Court on November 12, 1993 withdrawing the reference of an adversary proceeding filed in the Maryland bankruptcy proceedings by plaintiff Lust and others against defendant Matese. Adversary No. 92A–154–SD. In that adversary proceeding, the plaintiffs objected to the dischargeability

---

**3.** On January 4, 1994, an Order was entered granting plaintiffs' motion to dismiss plaintiffs James B. Gaughran and Virginia A. Vicario as parties to this action.

**4.** As noted, Smith has now been dismissed as a defendant in this case.

of certain debts of defendant Matese pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4). The claims asserted by the plaintiffs in that adversary proceeding are therefore now a part of the claims before the Court in this civil action.

In their amended complaint, plaintiffs allege that the Planners who remain as defendants in this case, namely defendants Naftal, Matese and David DeSanto, both individually and under the guise of entities controlled by them, advertised and otherwise held themselves out to be financial planners and advisors. It is alleged that the Planners induced members of the public, including the plaintiffs, to retain the Planners or entities controlled by them for financial planning and for investment advisory services. It is further alleged that the Planners represented to the plaintiffs that they would prepare financial plans and recommend investments which would safeguard their clients' assets and achieve stated goals of long term growth, security and retirement income; that instead, the Planners recommended and steered plaintiffs and other clients into more than 50 high risk investment schemes which were syndicated and/or controlled by the Planners and their associates; that the Planners and other defendants made numerous written and oral misrepresentations to plaintiffs in order to induce the plaintiffs to invest in their schemes; that the Planners routinely failed to disclose to plaintiffs material facts relating to plaintiffs' investments; that the Planners and their associates received large commissions for recommending certain high risk investments to the plaintiffs and failed to disclose to plaintiffs the existence of these commissions; that the Planners also recommended that their clients obtain mortgages on their personal residences and invest funds received in high risk investments recommended by the Planners; and that the Planners wrongfully diverted and converted plaintiffs' funds by way of undisclosed and unauthorized fees and borrowings.

In the amended complaint, plaintiffs support these broad allegations with detailed descriptions of some 17 different investment schemes in which the plaintiffs made investments through or with the Planners. Plaintiffs' allegations are further supported by their lengthy RICO Fact Statement. Plaintiffs also allege that defendants Naftal, Matese, David DeSanto and Field fraudulently filed for bankruptcy protection in order to escape the obligations owed by them to plaintiffs and others who had invested in their fraudulent schemes. Without attempting to detail the many specific allegations contained in the amended complaint, the Court would merely note that the amended complaint contains numerous factual allegations indicating that the Planners knowingly committed fraudulent and other wrongful acts, that the Planners knowingly participated in the selling and syndicating of various fraudulent investment schemes, and that plaintiffs have as a result suffered substantial financial losses, including in some instances a loss of their entire investments.

## II

### Applicable Principles of Law

The Court would note first that a motion to dismiss filed under Rule 12(b)(6), F.R.Civ.P., should be denied unless it appears beyond doubt that a plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In determining whether to dismiss a complaint, a court must view the well-pleaded material allegations in a light most favorable to the plaintiff, with the alleged facts accepted as true. 2A *Moore's Federal Practice,* ¶ 12.07 [2.–5] (2d ed. 1987); 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 304–21 (1990). This rule has recently been applied by the Fourth Circuit in a RICO case. *Mylan Labs, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993).

In support of their motions to dismiss filed under Rule 12(b)(6), several defendants contend that the amended complaint has failed to allege that they had a role in directing the affairs of the alleged RICO enterprise, as required by the recent Supreme Court decision of *Reves v. Ernst & Young,* —— U.S. ——, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). Section 1962(c) makes it unlawful "for any person employed by or associated with any

enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." In *Reves*, the Supreme Court held that before liability may attach to an individual defendant under § 1962(c), a plaintiff must show that the individual defendant played "some part in directing the enterprise's affairs." *Id.*, 113 S.Ct. at 1170.

## III

*Motion to Dismiss of Defendant Naftal*

By way of his motion, defendant Naftal asks this Court to dismiss the claims asserted in the amended complaint against him on the grounds: (1) that pursuant to Rule 12(b)(6) the amended complaint fails to state a claim upon which relief can be granted; (2) that the amended complaint does not plead fraud with the requisite particularity as required by Rule 9(b); (3) that the amended complaint fails to allege that defendant Naftal had any role in directing the affairs of the alleged RICO enterprise pursuant to the doctrine of *Reves v. Ernst & Young, supra*; and (4) that the amended complaint does not comply with the Court's Order of May 21, 1993 which required plaintiffs to file a RICO Fact Statement. In addition, defendant Naftal has argued that the claims alleged against him by plaintiffs are barred by limitations and that many of the plaintiffs named in the amended complaint have not been granted relief from the automatic stay provisions of § 362(a) applicable as a result of Naftal's bankruptcy proceedings pending in the Eastern District of Virginia.

■ From its review of the numerous allegations contained in the lengthy amended complaint and in plaintiffs' RICO Fact Statement, this Court has concluded that it does not appear beyond doubt that plaintiffs can prove no set of facts in support of their claims which would entitle them to relief from defendant Naftal. The Court would note that defendant Naftal is one of the four Planners who were allegedly primarily responsible for the RICO and fraud violations which caused plaintiffs' losses. None of the other Planners has challenged the sufficiency of the allegations contained in the amended complaint. The amended complaint clearly alleges specific fraudulent and deceptive acts of Naftal whereby he participated in directing the affairs of a RICO enterprise through a pattern of predicate racketeering acts. It is alleged that Naftal, as one of the Planners, directly solicited and induced plaintiffs to invest in fraudulent investment schemes devised and implemented by him and by other defendants. The amended complaint is therefore not subject to dismissal as to defendant Naftal pursuant to Rule 12(b)(6).

■ Moreover, the Court is satisfied that the amended complaint complies with Rule 9(b) in its allegations of fraud. In a RICO case, the "circumstances constituting fraud" under Rule 9(b) refer to such matters as "the time, place and contents of the false representations, as well as the identity of the person making the representation, and what [was] obtained thereby." *Windsor Assoc., Inc. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md.1983). Plaintiffs have here alleged circumstances of fraud with sufficient particularity to survive the motion to dismiss filed by defendant Naftal. The allegations of time, place and nature of the incidents of allegedly fraudulent conduct of defendant Naftal are sufficient to give him adequate notice of plaintiffs' claims and enable him to prepare an adverse pleading. *Nunes v. Merrill Lynch*, 609 F.Supp. 1055, 1065 (D.Md. 1985).

■ Relying on *Reves*, defendant Naftal has also argued that plaintiffs have failed to allege that he actively managed or operated a RICO enterprise. This Court would disagree. The amended complaint alleges that Naftal was one of the Planners who devised fraudulent investment schemes and solicited plaintiffs and other clients to invest in them. It has therefore been clearly alleged that defendant Naftal played "some part" in directing the affairs of the RICO enterprise.

■ Other arguments advanced by defendant Naftal in support of his motion to dismiss are likewise unavailing. From its review of the allegations of the amended complaint, this Court cannot conclude that plaintiffs' claims against defendant Naftal are

barred by limitations. Plaintiffs have satisfied the four year statute of limitations requirement for RICO claims by alleging that each of the defendants committed a predicate act within the four years prior to the filing of the complaint. Moreover, plaintiffs have argued that Naftal's fraudulent concealment tolled applicable statutes of limitations. *See, e.g., Rodriguez v. Banco Central,* 917 F.2d 664 (1st Cir.1990). There has been no discovery in this case, and it is accordingly much too early in the litigation to determine whether particular claims or aspects of claims are barred by limitations. If discovery undertaken in the case indicates that a particular claim asserted by a particular plaintiff is barred by limitations, defendant Naftal may at a later date address that issue by way of a motion for partial summary judgment.

■ As defendant Naftal has pointed out, not all of the plaintiffs have requested and received relief from the automatic stay provisions of § 362(a) applicable here because of Naftal's bankruptcy case pending in the United States Bankruptcy Court for the Eastern District of Virginia. Nevertheless, this Court will not at this time dismiss the claims asserted by the plaintiffs in question against defendant Naftal. By Order dated April 3, 1993, Bankruptcy Judge Bostetter did lift the stay as to some 40 individuals, including plaintiff Regina Lust. Whether or not, for similar reasons, the stay should be lifted as to other plaintiffs named in this suit is a decision for the Virginia Bankruptcy Court to make under all applicable circumstances in the Naftal bankruptcy case. Counsel for plaintiffs should promptly move in the Virginia Bankruptcy Court for a lifting of the stay as to the other plaintiffs in question. If that Bankruptcy Court denies plaintiffs' motion, defendant Naftal may renew in this case his motion to dismiss the claims of the plaintiffs in question. Meanwhile, those individuals and/or entities will remain as plaintiffs in this suit.

For all these reasons, the motion to dismiss of defendant Naftal will be denied.

## IV

### Motion to Dismiss of Defendant Burke

By way of his motion to dismiss, defendant Burke contends that the amended complaint should be dismissed as to him on the grounds: (1) that the amended complaint fails to allege fraud with the requisite particularity required by Rule 9(b); (2) that the amended complaint fails to allege that defendant Burke had a role in directing the affairs of the alleged RICO enterprise pursuant to the *Reves* doctrine; and (3) that the amended complaint fails to sufficiently allege other elements of plaintiffs' RICO causes of action. In addition, defendant Burke argues that the claims asserted by plaintiffs against him are barred by limitations.

The Court's discussion of the Rule 9(b) and limitations arguments of defendant Naftal likewise apply to the similar contentions made by defendant Burke. For the reasons stated hereinabove, the Court is satisfied that the amended complaint meets the requirements of Rule 9(b) in its allegations of fraud directed to the conduct of defendant Burke and that the amended complaint is not subject to dismissal at this time as to defendant Burke on grounds of limitations. A more extended discussion is required as to the argument of defendant Burke that the amended complaint does not as to him satisfy the requirements of *Reves*.

■ Defendant Burke is a Certified Public Accountant who at the relevant times alleged in the amended complaint shared offices with defendant Matese in Rockville, Maryland. Plaintiffs allege that, in addition to providing accounting and other financial services to defendant Matese and to others, defendant Burke participated in at least three of the fraudulent investment schemes described in the amended complaint by serving as one of the partners of several partnerships which formed a part of the RICO enterprise in question. It is further alleged that at least on one occasion defendant Burke agreed to appear as the managing partner in name only so as to conceal the affiliation between two partnerships which were controlled by defendants Matese and Naftal. Plaintiffs also allege that in another

instance defendant Burke served along with defendant Matese as the sole general partners in a partnership which furthered yet another fraudulent investment scheme. Plaintiffs have further alleged that defendant Burke committed numerous acts of mail fraud in furtherance of these and other fraudulent investment schemes.

On the record here, this Court concludes that plaintiffs have alleged sufficient facts to support their claims that defendant Burke violated §§ 1962(c) and 1962(d) of RICO. Had Burke's participation in the allegedly fraudulent schemes been limited to merely providing accounting services to other defendants, he, like the defendant in *Reves*, would have avoided RICO liability under the principles enunciated by the Supreme Court in *Reves*. However, in their amended complaint, plaintiffs have sufficiently alleged that defendant Burke was a principal in several of the alleged fraudulent investment schemes and that defendant Burke directly participated in the management and operation of those schemes in violation of RICO. Moreover, the allegations in question are sufficient to state claims against defendant Burke based on theories of fraud.

For these reasons, the motion to dismiss of defendant Burke will be denied.

### V

### *Motions to Dismiss of Defendant Stephen DeSanto and Defendant Dorothy DeSanto*

As noted hereinabove, defendant David DeSanto is allegedly one of the Planners of the fraudulent investment schemes which led to plaintiffs' losses. Defendant Dorothy DeSanto is the wife of defendant David DeSanto, and defendant Stephen DeSanto is the son of defendant David DeSanto. By their motions to dismiss, defendants Dorothy and Stephen DeSanto each contend that the amended complaint does not contain sufficient allegations of wrongdoing to permit them to be held liable for RICO violations. Following its review of the allegations in question, the Court would agree.

 The amended complaint indicates that defendants Dorothy and Stephen De-

Santo were involved in only one allegedly fraudulent investment scheme, namely the so-called 610 Special Mortgage Trust Scheme (hereinafter the "610 Scheme"). Plaintiffs have alleged that defendant Stephen DeSanto participated in the 610 Scheme by notarizing a deed of trust which contained a forged signature. However, plaintiffs have not alleged that Stephen DeSanto knew that the signature was forged or that he forged it himself. Dorothy DeSanto is alleged to have executed a deed of trust on property which she and David DeSanto jointly owned. It is further alleged that Dorothy DeSanto intended not to honor the obligation created by this deed of trust, that she intended to conceal the fraudulent nature of the 610 Scheme and that she committed bankruptcy fraud by concealing her obligations under said deed of trust.

From its review of the allegations of the amended complaint which relate to defendants Dorothy and Stephen DeSanto, this Court has concluded that plaintiffs have failed to sufficiently allege that either of these defendants participated in directing the operation or management of the affairs of the RICO enterprise in question, as required by *Reves*, and also that plaintiffs have failed to sufficiently allege that defendants Dorothy and Stephen DeSanto participated in such affairs through a "pattern" of racketeering activity. The amended complaint therefore does not adequately allege that Dorothy and Stephen DeSanto had a role in directing the affairs of the RICO enterprise in question. It is apparent that plaintiffs rely heavily on the fact that these two defendants are respectively the wife and son of defendant David DeSanto. Although the amended complaint clearly contains sufficient allegations supporting the RICO claims asserted by plaintiffs against David DeSanto, plaintiffs must do more than merely rely on the familial relationship between these various defendants to be entitled to relief from Dorothy DeSanto and Stephen DeSanto. Plaintiffs cannot be permitted to proceed in this suit against Dorothy and Stephen DeSanto based on the inference that, because David DeSanto committed fraudulent and racketeering acts, Dorothy and Stephen DeSanto were

probably also involved in these acts because of the familial relationship. In the absence of more specific allegations of fact than those contained in the amended complaint and in the RICO Fact Statement, the Court concludes that plaintiffs have not sufficiently alleged that Dorothy and Stephen DeSanto played a part in directing the operation or management of the affairs of the RICO enterprise in question. *See Reves*, —— U.S. at ——, 113 S.Ct. at 1170.

■ Moreover, allegations of one or more isolated fraudulent acts are not sufficient to satisfy requirements of RICO. The Fourth Circuit has held that isolated fraudulent acts which "were part of a single, limited scheme to defraud" may not amount to a "pattern" of such activity sufficient for a finding of RICO liability under § 1962(c). *International Data Bank, Ltd. v. Zepkin*, 812 F.2d 149 (4th Cir.1987). Under RICO, a pattern of racketeering activity requires proof of *at least* two predicate acts involving such activity. *See* 18 U.S.C. § 1961(5). In *Zepkin*, the Fourth Circuit noted that the Supreme Court in *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) had suggested that, while two predicate acts were required in order to find that a pattern existed, even two such acts might not be sufficient. *Id.* at 154. "Indeed, in common parlance two of anything do not generally form a 'pattern.'" *Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14.

Since *Zepkin*, the Supreme Court has held that a pattern of racketeering activity may be evidenced by a closed-end or single fraudulent scheme if the predicate acts extend over a substantial period of time. *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Walk v. B & O R.R.*, 890 F.2d 688 (4th Cir.1989). More recently, the Fourth Circuit has reaffirmed the principles enunciated by it in *Zepkin* and has ruled that before a finding of a "pattern" of racketeering activity can be made, the predicate acts must demonstrate "continuity plus relationship." *See Eastern Publishing & Advertising, Inc. v. Chesapeake Publishing & Advertising, Inc.*, 895 F.2d 971 (4th Cir.1990). "To spell out this requirement, one might say

that the predicate acts must be related and must be part of a continuous criminal endeavor." *Zepkin*, 812 F.2d at 154.

When these RICO principles are applied in this case, it is apparent from the allegations of the amended complaint that Dorothy and Stephen DeSanto at most played very minor roles in the racketeering activity alleged and that the role of each pertained to a single, limited fraudulent scheme. Plaintiffs' claims against Stephen DeSanto are based essentially on the allegation that he notarized a deed of trust containing a forged signature. Plaintiffs' claims against Dorothy DeSanto are based essentially on the allegation that she executed a deed of trust which was a part of the fraudulent nature of the 610 Scheme. Under the principles enunciated in *Reves, Zepkin* and *Eastern Publishing*, this Court has concluded that the allegations in question are insufficient for a finding that Dorothy DeSanto and Stephen DeSanto are liable for "conduct[ing] or participat[ing], directly or indirectly in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Plaintiffs' RICO claims asserted against both Dorothy DeSanto and Stephen DeSanto will accordingly be dismissed, without leave to plaintiff to file a second amended complaint as to them.

■ Although defendant Stephen DeSanto is charged with fraud in Counts III and IV, defendant Dorothy DeSanto is not named in those two counts. Plaintiffs rely on the doctrine of pendent jurisdiction in proceeding against defendant Stephen DeSanto under Counts III and IV. However, pendent jurisdiction is a doctrine of discretion and not one of a plaintiff's right. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The Supreme Court has expressly cautioned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal law claims are dismissed before trial ... the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139. The principles of *Gibbs* have

been codified under the name "Supplemental jurisdiction." 28 U.S.C. § 1367.

■ Here, the only federal claims against defendant Stephen DeSanto are being dismissed pursuant to his motion to dismiss. The Court may decline to exercise supplemental jurisdiction if all claims over which it has original jurisdiction have been dismissed. 28 U.S.C. § 1367(c)(3). A majority of the courts which have considered the question have declined to exercise pendent jurisdiction over state claims when the federal claims have been disposed of prior to a full trial on the merits. *See Hector v. Weglein,* 558 F.Supp. 194, 204–205 (D.Md.1982). Outlining the relevant factors to be considered in determining the appropriateness of a court's exercise of its discretion to decide pendent state claims, Judge Friendly in *Kavit v. A.L. Stamm & Co.,* 491 F.2d 1176 (2d Cir.1974) said the following:

> If it appears that the federal claims … could be disposed of on a motion [prior to trial], the court should refrain from exercising pendent jurisdiction absent exceptional circumstances.

*Id.* at 1180.

Since plaintiffs' federal claims against defendant Stephen DeSanto are being dismissed and since there are no exceptional circumstances here, this Court will not exercise pendent jurisdiction over him in this case. Accordingly, the motion to dismiss of defendant Stephen DeSanto must likewise be granted as to plaintiffs' claims asserted against him in Counts III and IV under state law.

For all the reasons stated hereinabove, the motion to dismiss of defendant Dorothy DeSanto and the motion to dismiss of defendant Stephen DeSanto will be granted, without leave to amend.

## VI

### Motion to Dismiss of Defendant Field

Appearing *pro se,* defendant Field has filed an answer to the amended complaint and also a motion to dismiss. Adopting by reference the memorandum of law submitted in support of the motion to dismiss of defendant Burke, defendant Field has moved to dismiss the amended complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted and under Rule 9(b) for failure to allege fraud with particularity.

From its review of the allegations of the amended complaint which relate to defendant Field, the Court has concluded that proper claims for relief have been stated and that plaintiffs have adequately alleged Field's fraudulent activity with particularity. Accordingly, defendant Field is not entitled to the dismissal of the amended complaint as to him under either Rule 9(b) or Rule 12(b)(6).

For the reasons stated, the motion to dismiss of defendant Field will be denied.

## VII

### Motion for Partial Summary Judgment of Defendant David DeSanto

By way of his motion for partial summary judgment, defendant David DeSanto seeks a ruling by this Court that the claims asserted in this case by 39 of the 70 remaining plaintiffs are barred by an Order entered in his bankruptcy proceedings. On April 22, 1992, an Order was entered by the United States Bankruptcy Court for the Eastern District of Virginia releasing David DeSanto from all dischargeable debts. According to David DeSanto, 39 of the plaintiffs named in the amended complaint were listed as creditors in his bankruptcy proceedings and defendant accordingly argues that the claims asserted by them may not be maintained in this suit.[5]

The Court would initially note that defendant David DeSanto, one of the alleged "Planners" of the fraudulent schemes at issue, is not here attacking the sufficiency of the allegations of the amended complaint which pertain to him. Defendant accordingly concedes that if his discharge in bankruptcy is revoked, the 39 plaintiffs in question may proceed to assert their claims against him in this civil action.

---

5. In his motion, defendant David DeSanto does not contend that the claims of the other 31 remaining plaintiffs named in the amended complaint are barred by the Bankruptcy Court's Order of April 22, 1992.

In opposing the motion of defendant David DeSanto, plaintiffs do not dispute that the claims asserted against him by the 39 plaintiffs in question will be barred if the Order of the Bankruptcy Court of April 22, 1992 is finally upheld as valid and enforceable. *Inter alia*, that Order enjoined all creditors whose debts were discharged by the Order from instituting or continuing any action to collect their debts as personal liabilities of the debtor David DeSanto. Plaintiffs are therefore not contesting the fact that the 39 individual plaintiffs in question were listed as creditors in the bankruptcy proceedings.

In opposing the pending motion for partial summary judgment, plaintiffs point to later proceedings in the Virginia Bankruptcy Court and in a Virginia District Court and contend that the Order of April 22, 1992 is not a final one. On October 2, 1992, plaintiffs William Moore, Virginia Hoke and Marion Zoller, filed an adversary proceeding in David DeSanto's bankruptcy case seeking a determination of the dischargeability of the debts allegedly owed them by DeSanto. The complaint was subsequently amended to add "The Hesco Corporation" (hereinafter "Hesco") as a party plaintiff in the adversary proceeding. Hesco is the corporate administrator of Hesco Retirement Trust, a named plaintiff in this suit. On April 5, 1993, the Bankruptcy Court entered an Order modifying automatic stay, which permitted plaintiffs Moore, Hoke, Zoller and Hesco in the adversary proceeding to name David DeSanto as a party defendant in this case. However, the Bankruptcy Court specifically retained "sole jurisdiction to determine whether Defendant's debts to Plaintiff are dischargeable pursuant to 11 U.S.C. § 523 or [whether] Defendant should be denied a discharge pursuant to 11 U.S.C. § 727...."

By Order dated July 26, 1993, the Bankruptcy Court dismissed with prejudice the amended complaint which plaintiffs Moore, Hoke and Zoller had filed in the adversary proceeding.[6] The Court ruled that the claims of these plaintiffs, which sought a determination of the dischargeability of debts owed to them by David DeSanto, were un-

timely since they were filed some five and one-half months after the bar date fixed by the Bankruptcy Court. Plaintiffs Moore, Hoke and Zoller have appealed the Order of the Bankruptcy Court dismissing their amended complaint in the adversary proceeding. That appeal is presently pending before the United States District Court for the Eastern District of Virginia.

The finality of David DeSanto's discharge has been challenged in another proceeding currently pending in the Virginia Bankruptcy Court. On April 22, 1993, the Trustee in that bankruptcy case filed an adverse proceeding seeking to revoke the discharge of David DeSanto. As grounds for the requested revocation, the Trustee alleged that DeSanto had made false statements in his bankruptcy petition, that he had failed to disclose material facts, that he had fraudulently concealed or transferred assets of his estate and that he had committed other fraudulent acts relating to the bankruptcy proceeding. That complaint is currently pending before the Bankruptcy Court, and no ruling has as yet been made.

█ On the record here, this Court cannot conclude that the discharge Order of April 22, 1992 bars the claims asserted here against David DeSanto by the 39 plaintiffs in question. The Order of April 22, 1992 is not as yet final. If it is revoked by the Virginia Bankruptcy Court, it cannot act as a bar to the claims of these 39 plaintiffs asserted in this case against David DeSanto. Moreover, there has been no final judicial determination concerning the dischargeability of the claims of plaintiffs Moore, Hoke, Zoller and Hesco. Although the Bankruptcy Court has ruled against plaintiffs Moore, Hoke and Zoller, an appeal from that ruling is pending in the United States District Court for the Eastern District of Virginia. Accordingly, the motion for partial summary judgment of defendant David DeSanto will be denied, without prejudice to the right of said defendant to seek similar relief at a later stage of these proceedings if the matters presently pending in the Eastern District of Virginia are finally adjudicated in his favor.

---

**6.** That Order did not by its terms apply to Hesco, and the claim of Hesco asserted in the adversary proceeding is apparently still pending before the Bankruptcy Court.

For these reasons, the motion for partial summary judgment of defendant David DeSanto will be denied, without prejudice.

## VIII

### *Motion to Dismiss of Defendant Michael Matese*

Like defendant David DeSanto, defendant Matese seeks to bar the claims of numerous plaintiffs named in the amended complaint by relying on proceedings in his bankruptcy case. Since proceedings in Matese's bankruptcy case have been quite different from those which occurred in David DeSanto's bankruptcy case, somewhat different considerations pertain to the contentions advanced by defendant Matese.

By way of his motion to dismiss, defendant Matese presents alternative arguments. First, he contends that the claims of 69 of the remaining 70 plaintiffs are untimely and barred by Bankruptcy Rules 4004, 4007 and 9006(b)(3). Next, defendant Matese argues in the alternative that the claims asserted against him by 29 of the 70 remaining plaintiffs are barred by the automatic stay provisions of 11 U.S.C. § 362(a). Like defendant David DeSanto, defendant Matese is not here challenging under Rule 12(b)(6) the sufficiency as to him of the allegations of the amended complaint.

The postures of the David DeSanto bankruptcy case and of the Matese bankruptcy case differ in two significant respects. First, David DeSanto has previously been granted a discharge whereas Matese has not.[7] Second, there has been a withdrawal of reference of an adversary proceeding filed in the Matese bankruptcy case. Pursuant to the Report of Bankruptcy Judge E. Stephen Derby dated June 4, 1993, this Court has entered an Order withdrawing the reference of adversary proceeding entitled *Lust, et al. v. Matese*, Adversary No. 92–154–SD, Bankruptcy Case No. 92–1–0634–SD. That adversary proceeding was instituted by plaintiff

Lust and two other parties on May 11, 1992.[8] A "First Amended Complaint" later filed in the adversary proceeding added 30 new plaintiffs. Three motions are pending in the adversary proceeding, the motion of defendant Matese to strike the First Amended Complaint and two motions filed by certain plaintiffs named in the amended complaint filed in this Court seeking an order allowing objections to discharge to be filed more than five months after the noticed bar date. Since reference of the adversary proceeding to the Bankruptcy Court has now been withdrawn and since the adversary proceeding is now a part of this civil action, all three of these motions which have been fully briefed by the parties are now before the Court for ruling.

Based on the record here, the Court cannot conclude at this time that the claims of 69 of the plaintiffs asserted in this case against defendant Matese are subject to dismissal because they are untimely. Further development of the facts is necessary before the question can be finally determined. There has been no discovery in this case and since the issue has been addressed solely by way of Matese's motion to dismiss, the allegations of the pleadings must be accepted as true.

In Schedule F of his petition seeking bankruptcy protection under Chapter 7 of the Bankruptcy Code, Matese identified more than 400 potential creditors, including most of the plaintiffs named in this suit. Creditors were sent an appropriate notice informing them of the bankruptcy proceedings and advising that the "bar date" for filing an objection to the debtor's discharge or to determine the dischargeability of debts of the debtor was May 9, 1992. *See* Bankruptcy Rules 4004(a) and 4007(c). It is conceded here that plaintiff Lust timely filed her complaint in the bankruptcy case objecting to the discharge of certain debts allegedly owed her by Matese. No other named plaintiff in this case objected to Matese's discharge or to the dischargeability of any of his debts prior to the May 9, 1992 bar date. Nevertheless, on

---

7. Although an Order of discharge was entered as to defendant Matese, it was later vacated by Judge Derby at the request of counsel for the plaintiffs.

8. Penny A. Neuman and Neil B. Neuman were the other two plaintiffs filing that adversary proceeding. The Neumans have apparently settled their claims asserted against defendant Matese, and are not plaintiffs in this civil action.

October 28, 1992, 29 individuals who are plaintiffs in this suit filed in the Lust adversary proceeding a motion seeking to object to Matese's discharge. A similar motion was filed on December 6, 1993. In those motions, plaintiffs have alleged that Matese fraudulently concealed from them claims which they had against him and that as a result they were prevented from filing timely complaints objecting to his discharge. Defendant Matese has filed an opposition to these motions.

Clearly, defendants' argument based on untimeliness must fail as to plaintiff Lust, who timely filed a complaint in the Bankruptcy Court objecting to the dischargeability of her claims against Matese. Moreover, questions arise concerning whether the claims of certain other plaintiffs are not in any event dischargeable because they or their proper addresses were not listed in schedules which accompanied Matese's bankruptcy petition and because they therefore did not receive proper notice of the bar date. *See* 11 U.S.C. § 523(a)(3)(B).

■ In any event, plaintiffs contend that even though they may not have acted timely, their right to challenge the discharge of Matese is not barred under equitable doctrines of tolling or estoppel. In advancing this argument, plaintiffs rely on *In re Mufti,* 61 B.R. 514 (C.D.Cal.1986). In that case, the Court held that the doctrine of equitable tolling may under appropriate circumstances be applicable to the filing of objections to the discharge in bankruptcy of a debtor. After noting that the Bankruptcy Code permits a creditor or trustee to bring a complaint within one year to revoke a discharge already granted on the ground that it was obtained by fraud, the Court noted that, under arguments similar to the one advanced by Matese here, "if the trustee [or a creditor] discovers the fraud before discharge but after the last date to object to discharge, he apparently has no remedy. That result defies logic and cannot have been intended by Congress." *In re Mufti,* 61 B.R. at 519.

Another pertinent case is *In re Santos,* 112 B.R. 1001 (Bankr. 9th Cir.1990), a decision of the United States Bankruptcy Appellate Panel of the Ninth Circuit. The Court there held that "the deadlines for filing dischargeability complaints and objections to discharge set forth in Rules 4007(c) and 4004(a) are not jurisdictional time limits." 112 B.R. at 1006. In *Santos,* the Court concluded that the total preclusion of equitable relief would be inconsistent with authority recognizing that "relief from the bar date should be allowed in extraordinary cases." *Id.* In its recent decision in *Farouki v. Emirates Bank International Limited,* 14 F.3d 244 (4th Cir.1994), the Fourth Circuit, concluding that *Santos* was a well reasoned case on the issue and should be followed, held that Rule 4004(a) does not preclude a bankruptcy court from exercising its equitable powers in extraordinary cases. (Op. at 1479).

The principles of *In re Mufti* and *In re Santos* will be applied here. Were the Court to now rule that the plaintiffs in question are barred from challenging Matese's discharge at this time, they would merely have to wait until after the discharge had been granted and then institute, as permitted by the Bankruptcy Code, an action to revoke it. It makes little sense to delay the determination of this issue for an indefinite period of time. Counts V and VI of the amended complaint request that this Court deny a discharge in bankruptcy to defendant Matese and deny the dischargeability of debts owed to plaintiffs by defendant Matese. Plaintiffs have alleged that the fraudulent activity of defendants in concealing from them their need to protect themselves with respect to Matese's bankruptcy was part of the scheme to defraud plaintiffs which is the subject of this action. The issues of equitable estoppel and fraudulent concealment cannot be finally determined at this stage of these proceedings by way of Matese's motion to dismiss. Accordingly, the claims against defendant Matese asserted by the plaintiffs in question will not be dismissed at this time on the ground of untimeliness.

The alternative argument of defendant Matese is similar to the one made by defendant Naftal. It is contended that 41 of the plaintiffs in this action are barred from proceeding here pursuant to 11 U.S.C. § 362(a). On February 6, 1993, plaintiff Lust and others filed in the Matese bankruptcy case a

motion to lift the automatic stay in order to allow Matese to be named as a party defendant in this suit. By Memorandum and Order Granting Relief From Stay dated June 4, 1993, Bankruptcy Judge Derby granted that motion as to plaintiff Regina Lust and 30 others. However, the Order in question did not lift the stay as to 29 of the remaining 70 plaintiffs named in this suit.

As noted hereinabove, the question whether in a particular bankruptcy case the automatic stay provisions of § 362(a) should be lifted as to the creditors is one for the Bankruptcy Court to make. Whether or not the reasons set forth in Judge Derby's Memorandum and Order of June 4, 1993 for lifting the stay as to 31 of the plaintiffs in this suit should also apply to the other 39 plaintiffs is a decision for Judge Derby to make. Counsel for plaintiffs should promptly move in the United States Bankruptcy Court for the District of Maryland for a lifting of the stay as to the 29 plaintiffs in question. If the Bankruptcy Court denies plaintiffs' motion, defendant Matese may renew in this case his motion to dismiss the claims of the plaintiffs in question. Meanwhile, the individuals and/or entities in question will remain as plaintiffs in this suit.

For the reasons stated, defendant Matese's motion to dismiss the amended complaint Matese will be denied.

For similar reasons, the Court will deny the motion of defendant Matese, filed in the Maryland bankruptcy proceedings in Adversary No. 92–154–ESD, to strike the First Amended Complaint of plaintiff Regina Lust and 30 other plaintiffs and for sanctions. That First Amended Complaint alleges grounds under 11 U.S.C. § 727 in support of plaintiffs' objections to the discharge of defendant Matese. The allegations of the First Amended Complaint are similar to those contained in Counts V and VI of the amended complaint filed by the same and other plaintiffs in this action. This Court will grant these plaintiffs leave to file the First Amended Complaint in Adversary No. 92–154–ESD, and the 30 other plaintiffs will be granted leave to intervene.

■ In support of his motion to strike the First Amended Complaint filed in Adver-

sary No. 92–154–ESD, defendant Matese relies on an Order entered by Bankruptcy Judge Derby on June 23, 1992. Shortly after they filed their original complaint in the adversary proceeding on May 11, 1992, the Lust and Neuman plaintiffs filed a motion seeking an extension of the bar date so that other creditors could also object to Matese's discharge. By Order dated June 23, 1992, Judge Derby, noting that the movants had already filed a complaint objecting to Matese's discharge and that cause did not exist to extend the deadline imposed by the Court's prior bar order for parties not seeking such an extension, denied the motion to extend time.

The Order of June 23, 1992 does not have preclusive effect. It was entered before this suit was filed and before the plaintiffs in this suit and in their later motions filed in the Matese bankruptcy proceedings had alleged that as a part of his fraud the debtor Matese concealed from the plaintiffs their status as creditors. As Judge Derby stated in his Memorandum and Order Granting Relief from Stay of June 4, 1993 (Slip op. at 5):

> An evidentiary hearing will be required to resolve the issue of movants' status, and it is not an economical use of judicial resources to try the fraud issues more than once.

There are also pending in Adversary No. 92–154–ESD plaintiffs' motion to allow objections to discharge, filed on October 28, 1992, and a more recent motion of plaintiffs to allow objections to discharge, filed on December 6, 1993. These two motions will remain pending. They both allege that Matese fraudulently concealed from plaintiffs the fact that they had a cause of action against him based on fraud. In support of these motions, plaintiffs rely on the doctrine of equitable estoppel which they assert permits them to object to Matese's discharge even though the Bankruptcy Rule 4004 bar date has passed. The issues raised cannot be determined at this early stage of these proceedings.

## IX

### *Conclusion*

For all the reasons set forth hereinabove, the motions to dismiss of defendant Dorothy

DeSanto and Stephen DeSanto will be granted. Other pending motions to dismiss will be denied, as will the motion of defendant David DeSanto for partial summary judgment and the motion to strike of defendant Matese. Defendants Naftal, Burke, David DeSanto [9] and Matese should file answers to the amended complaint within 15 days.[10] An appropriate Order will be entered by the Court.

---

9. This Court's Order of October 13, 1993, entered as to David DeSanto is hereby rescinded.

10. Defendant Field has previously filed an answer to the amended complaint.